UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALEXANDER BAKAL, DAVID VISHER,
SANDRA VISHER and ESM FUND I, L.P., on
behalf of themselves and all others similarly
situated,

|  |  |
|---|---|
| Plaintiffs, | 15-cv-6976 (PKC) |
| -against- | MEMORANDUM AND ORDER |
| U.S. BANK NATIONAL ASSOCIATION, |  |
| Defendant. |  |

------------------------------------------------------------x

CASTEL, U.S.D.J.

MASTR Adjustable Rate Mortgage Trust 2006-OA2 (the "Trust") is a securitization trust that holds 5,660 first-lien, adjustable-rate mortgage loans. Those loans were acquired by non-party UBS Real Estate Securities Inc. ("UBS") from assorted mortgage-loan originators, then transferred and pooled into the Trust, which sold securitized interests in those mortgages as residential mortgage-backed securities ("RMBS"). Investors purchased certificates issued by the Trust and received distributions based on the interest and principal paid by the mortgage loans' borrowers.

Defendant U.S. Bank National Association ("U.S. Bank," or the "Trustee") is the Trustee of the Trust, and the plaintiffs are four Certificateholders of the Trust. U.S. Bank's duties as Trustee are described in the Pooling and Servicing Agreement (the "PSA") that formed and governs the Trust. Plaintiffs allege that U.S. Bank failed to take the actions required under the PSA when it learned that UBS breached representations and warranties about the Trust's mortgage loans, and, separately, failed to enforce the PSA's remedial measures when the Master

Servicer of the Trust, Wells Fargo, N.A. ("Wells Fargo"), caused purported events of default. The Court notes that in 2012, U.S. Bank brought a breach of contract action against UBS, alleging that UBS breached the PSA's representations and warranties as to the underlying mortgage loans and seeking recovery on behalf of the Trust and two near-identical RMBS trusts. U.S. Bank, National Association v. UBS Real Estate Securities Inc., 12 Civ. 7322 (PKC).

U.S. Bank moves to dismiss the Second Amended Class Action Complaint (the "Complaint") pursuant to Rule 12(b)(6), Fed. R. Civ. P.  (Docket # 45.)  Because the Complaint's theories of liability are not supported by the PSA's unambiguous language, U.S. Bank's motion to dismiss is granted in its entirety.

BACKGROUND.

A.   The Organization and Purpose of the Trust.

The Trust is a New York common law trust established and governed by the PSA. (Compl't ¶ 17.)  When formed, it held 5,660 first-lien, adjustable-rate mortgage loans, with a total principal amount of more than $2.01 billion.  (Compl't ¶¶ 11, 18.)  The Trust issued certificates, which entitled their holders to returns based on borrowers' payments of interest and/or principal on the mortgage loans, as set forth by the PSA.  (Compl't ¶¶ 17-18.)  There are 28 classes of certificates issued by the Trust, and the payment to Certificateholders varies based on borrowers' expected ability to repay principal and interest, as well as the adequacy of the borrower's collateral in the event of a default.  (Compl't ¶ 18.)

UBS purchased mortgage loans from various originators and transferred them to the Trust.[1]  (Compl't ¶ 20.)  In its capacity as transferor and sponsor of the Trust, UBS made

---

[1] Most of the mortgage loans held by the Trust were originated by IndyMac Bank and Countrywide Home Loans, Inc. (Compl't ¶¶ 38, 44.)  IndyMac originated 37.47% of the loans and Countrywide originated of 47.51% of the loans.  (Compl't ¶¶ 38, 44.)  The Complaint describes IndyMac and Countrywide as "culprits" that degraded underwriting standards across the lending industry.  (Compl't ¶ 37.)

2

numerous representations and warranties about the mortgage loans pooled into the Trust, including their compliance with originators' underwriting guidelines and the accuracy of the borrower data as set forth in a mortgage loan schedule ("MLS").  (Compl't ¶ 22.)

The PSA requires U.S. Bank to enforce certain remedial obligations in the event that UBS breaches a representation and warranty.  (Compl't ¶¶ 59, 62-64.)  Under the PSA, if any mortgage loan held by the Trust is found to have breached a representation and warranty, and that breach materially and adversely affects the interests of the Certificateholders, UBS is required to cure the breach, or to replace or repurchase the defective loan.  (Compl't ¶ 23, 62-64.)  The PSA requires U.S. Bank to give timely notice of any breach known to it.  (Compl't ¶¶ 23, 62-63.)  According to the Complaint, U.S. Bank is trustee of approximately 30% of the national RMBS market, and is the largest RMBS trustee in the United States.  (Compl't ¶ 12.)

> B.  The Complaint's Allegations Concerning U.S. Bank's Duties to Enforce the <u>PSA against UBS.</u>

Beginning in or around May 2008, an increasing number of borrowers defaulted on payments owed for the mortgage loans held by the Trust.  (Compl't ¶ 90.)  By November 2009, the Trust had lost more than $100 million, a sum that the Complaint calls "extraordinarily high."  (Compl't ¶ 90.)  According to the Complaint, by May 2010, the percentage of loans that were delinquent, subject to bankruptcy proceedings, in foreclosure or owned by the lender peaked at 55.065% of all loans held by the Trust, reflecting 57.4% of the Trust's total balance. (Compl't ¶ 90.)

The PSA sets forth U.S. Bank's contractual duties to protect the Trust and its Certificateholders, including the obligation to provide prompt written notice to UBS in the event that U.S. Bank learns of a breach of representations and warranties.  (Compl't ¶¶ 62-63; PSA § 2.03.)  According to plaintiffs, beginning in or around August 2010, U.S. Bank had knowledge

that UBS had breached the representations and warranties of the PSA, but it nevertheless waited until 2012 to commence litigation against UBS.  (Compl't ¶ 3.)

The Complaint describes various ways that U.S. Bank knew that the Trust was "filled" with defective loans, including written breach notices and a subsequent lawsuit that the certificate insurer, Assured Guaranty Municipal Corp. ("Assured"), brought against UBS; awareness on the part of U.S. Bank that the Trust owned an ever-growing number of loans that were made to borrowers who were delinquent, in bankruptcy protection, subject to foreclosure or had mortgage loans owned by the lender; that the MLS data for loans held by the Trust included information that was not true and correct in all material respects; that government reports placed U.S. Bank on notice of lending abuses by the originators; that U.S. Bank was aware that mortgage loans were performing poorly based on its role as servicer of other RMBS trusts; and that insurers who covered losses from borrower defaults gave U.S. Bank notice of defective underwriting and securitization practices.  (Compl't ¶¶ 68-123.)

According to the Complaint, after learning of defects in loans held by the Trust, U.S. Bank failed to carry out its duty to enforce the PSA.  The Complaint alleges that plaintiffs urged U.S. Bank to notify UBS that the Trust's underlying mortgage loans were in breach of the representations and warranties, but that U.S. Bank refused to take "appropriate actions" to enforce UBS's obligations to repurchase, replace or cure defective loans.  (Compl't ¶¶ 132-34.)

Plaintiffs allege that U.S. Bank also failed to carry out its duties as Trustee because it never physically possessed the Mortgage Files of loans held by the Trust.  (Compl't ¶¶ 59-61.)  "Mortgage File" is a defined term under the PSA, and includes the original mortgage note, the lender's title policy and other defined documents related to a mortgage loan.  (PSA §§ 1.01, 2.01(b).)  Plaintiffs allege that it was the responsibility of U.S. Bank to take possession of

the Mortgage Files and to notify UBS of any document defects.  (Compl't ¶¶ 60, 124; PSA §§ 2.01, 2.02.)  As will be discussed below, however, the PSA unambiguously assigns that task to Wells Fargo in its capacity as Custodian.

C. The Complaint's Additional Allegations as to U.S. Bank's Duties as Trustee,
   Including those Related to Enforcing the PSA as to Wells Fargo.

Plaintiffs also allege that U.S. Bank failed to take actions required under the PSA when an event of default arose out of the performance of the Trust's Master Servicer, non-party Wells Fargo Bank, N.A. ("Wells Fargo").  Wells Fargo was a party to the PSA, and acted as the Trust Administrator, Master Servicer and Custodian.  (Compl't ¶ 28.)

The PSA sets forth distinct, separately defined obligations on the part of Wells Fargo in each of these capacities.  Because plaintiffs' claims turn in large part on Wells Fargo's performance as Master Servicer, in reviewing the Complaint's allegations, it is important to distinguish among Wells Fargo's different contractual duties, depending on the capacity in which it is acting.  Among other things, the Master Servicer supervises, monitors and oversees the performance of the Trust's individual mortgage loan servicers, and is responsible for depositing funds in the Distribution Account established by the PSA.[2]  (PSA §§ 3.01-3.02.)  The relationship between the Trustee and the Master Servicer is governed by Article VIII of the PSA.  As Trust Administrator, Wells Fargo's duties include the distribution of available funds to Certificateholders, according to the order of priority set by the waterfall provisions of the PSA.  (Compl't ¶ 72.)  The duties of the Trust Administrator are governed by Article IX of the PSA.

Many of plaintiffs' claims turn on allegations related to a purported "Master Servicer Event of Termination" ("MSET"), which qualifies as an event of default under the PSA.

---

[2] Wells Fargo's role as Master Servicer is distinct from the direct servicers of the mortgage loans, which the PSA identifies as "AHM, Cenlar, Countrywide, GMACM, IndyMac and RFC."  (PSA § 1.01.)  Wells Fargo was not, itself, a servicer of the loans held by the Trust.

Plaintiffs allege that when U.S. Bank becomes aware of an MSET, its duty of care to the Certificateholders "significantly increased," and U.S. Bank was required to "act like a quasi-fiduciary for plaintiffs . . . ." (Compl't ¶ 67.)  U.S. Bank's remedies for an uncured MSET include the power to terminate the Master Servicer, permit the Master Servicer to cure, or assume the duties of Master Servicer itself.  (Compl't ¶ 66; PSA § 7.01.)  In the event that U.S. Bank learns that an uncured event of default has occurred, the PSA provided that U.S. Bank "shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs."  (Compl't ¶ 67; PSA § 8.01.)

Section 7.01 of the PSA defines the circumstances that constitute an MSET, and thus an event of default.  The Complaint alleges that under section 7.01(i) of the PSA, an MSET occurred in August 2010, when Wells Fargo failed to deposit with the Trust the amounts required under the PSA, and that its deposits continued to fall short in the months that followed.  (Compl't ¶ 136.)  These purported shortfalls prompted a chain of developments that included coverage obligations by the certificate insurer, Assured, to provide full payment to certain classes of Certificateholders, and Assured's subsequent lawsuit against UBS alleging breaches of representations and warranties.  (Compl't ¶ 137.)

According to the Complaint, U.S. Bank should have, but did not, provide written notice of default to Wells Fargo, and did not terminate Wells Fargo's rights and obligations as Master Servicer.  (Compl't ¶ 138.)  The Complaint alleges that in failing to take such actions, U.S. Bank "imprudently caused harm to Plaintiffs and breached the PSA."  (Compl't ¶ 140.)

The Complaint alleges that U.S. Bank itself also triggered an event of default when it failed to provide written notice that representations and warranties had been breached.

6

(Compl't ¶ 135.)  According to plaintiffs, U.S. Bank had an obligation to declare its own event of default under the PSA and to provide notice of its failure to provide timely breach notices. (Compl't ¶ 135.)

> D.  Other Legal Actions Related to the Trust.

The current action was brought in the wake of three other, related litigations in this District.  Those proceedings are relevant both as background context for the Certificateholders' claims here, and because they relate to the substance of their claims that U.S. Bank failed to enforce UBS's obligations under the PSA.

In Wells Fargo Bank, N.A. v. ESM Fund I, LP, et al., 10 Civ. 7332 (LBS), Wells Fargo, acting "solely in its capacity as Trust Administrator," brought an interpleader action against the plaintiff Certificateholders in this action, Assured, and others, in order to adjudicate the priority of payments to be made out of the Trust's Distribution Account.  Senior Certificateholders and Assured had disputed their respective entitlement to the priority of payments from the Trust, and advanced conflicting interpretations of the PSA's "waterfall" provisions at section 4.02.  (Id. Docket # 1.)  Judge Sand construed the waterfall provisions and concluded that the senior Certificateholders, such as plaintiffs in the present case, had a higher priority of payment than both Assured and the Trust's less-senior Certificateholders, and he directed Wells Fargo in its capacity as Trust Administrator to make distributions accordingly. Wells Fargo Bank, N.A. v. ESM Fund I, LP, 785 F. Supp. 2d 188, 194 (S.D.N.Y. 2011).

In Assured Guaranty Municipal Corp. v. UBS Real Estate Securities Inc., 12 Civ. 1579 (HB), Assured alleged that UBS breached certain representations and warranties contained in the PSA, as well as in the near-identical PSAs of two other RMBS trusts.  Judge Baer denied UBS's motion to dismiss that claim, as well as a breach of contract claim alleging that UBS

conveyed false data to ratings agencies about the quality of the underlying mortgage loans. See Assured Guar. Mun. Corp. v. UBS Real Estate Sec., Inc., 2012 WL 3525613 (S.D.N.Y. Aug. 15, 2012). Judge Baer dismissed Assured's declaratory judgment claims and Assured's claim that UBS breached its obligation to repurchase or cure defective loans, concluding that the PSAs did not give Assured the power to enforce UBS's repurchase obligations, which instead resided with U.S. Bank as Trustee. Id. at *4-7. The parties filed a stipulation of voluntary dismissal on May 6, 2013. (12 Civ. 1579, Docket # 90.)

Acting on behalf of the Trust and two near-identical RMBS trusts, U.S. Bank commenced a breach of contract action, which alleged that UBS was required to replace, repurchase or cure loans that were in breach of representations and warranties. U.S. Bank, National Association v. UBS Real Estate Securities Inc., 12 Civ. 7322 (PKC). Judge Baer accepted assignment of that action as related to the Assured case, and it was later transferred to the undersigned, following the death of Judge Baer. In a pre-trial ruling, this Court concluded that U.S. Bank provided UBS with mandatory written notice of all loans alleged to have breached the PSA's representations and warranties. MASTR Adjustable Rate Mortgages Tr. 2006-OA2 v. UBS Real Estate Sec. Inc., 2016 WL 1449751 (S.D.N.Y. Apr. 12, 2016) (citing Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc., 133 A.D.3d 96 (1st Dep't 2015)).

Shortly after the Trustee's action against UBS was filed, the plaintiff Certificateholders in the present case moved to intervene, urging that U.S. Bank could not adequately protect their interests. Judge Baer denied the motion, and concluded that U.S. Bank and the Trust's Certificateholders had the same "ultimate objective" of maximizing recovery against UBS. MASTR Adjustable Rate Mortgages Trust 2006-OA3 v. UBS Real Estate Sec.,

Inc., 2013 WL 139636 (S.D.N.Y. Jan. 11, 2013).  More recently, on February 6, 2018, Sandra Visher and David Visher, who are plaintiffs in the present action, filed another motion to intervene, which remains sub judice.  (12 Civ. 7322, Docket # 569.)

This Court presided over a bench trial of that action from April 18 to May 13, 2016.  In a 239-page decision, the Court set forth its findings of fact and conclusions of law, which construed the PSAs, applied them to twenty exemplar loans and concluded that a Master must be appointed to review all loans that remained in dispute.  U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc., 205 F. Supp. 3d 386 (S.D.N.Y. 2016).  Among other things, the Court concluded that UBS had warranted that all loans in the three trusts had been originated in compliance with applicable underwriting guidelines and also warranted that all data contained in the MLS was true and correct.  See id.  The Court's review of the exemplar loans found instances of borrower fraud, inaccuracies in the MLS and incomplete documentation.  See id.  Final judgment has not yet been entered in that case.

E.   The Relief Sought by Plaintiffs in this Action.

This case is brought as a putative class action on behalf of all current Certificateholders.  (Compl't ¶¶ 145-50.)  Plaintiffs allege that their suit is not barred by a "no action" clause contained in the PSA, which limits Certificateholders' ability to bring suits related to the Trust.  (Compl't ¶¶ 142-44.)  As to damages, plaintiffs allege that they have been injured as a result of the defective loans held by the Trust, which, they state, is "attributable" to U.S. Bank's breach of statutory, contractual and common-law duties.  (Compl't ¶ 141.)

Plaintiffs' claims are brought under New York law, and subject matter jurisdiction is premised on diversity of citizenship and the Class Action Fairness Act.  (Compl't ¶ 5.)  Count One alleges that U.S. Bank breached the PSA by, among other things, failing to enforce UBS's

repurchase obligations, failing to take physical possession of the mortgage loan files and failing to enforce "appropriate remedies" against Wells Fargo when MSETs occurred. (Compl't ¶¶ 151-58.) Count Two alleges breach of a duty of trust, and asserts that U.S. Bank did not act on behalf of the best interests of the Trust or its Certificateholders. (Compl't ¶¶ 159-69.) Count Three alleges a breach of the implied covenant of good faith and fair dealing. (Compl't ¶¶ 170-74.) Count Four alleges that U.S. Bank violated New York's Streit Act, N.Y. Real Property Law § 126(1), which requires a trust document to impose certain obligations on a trustee when an event of default occurs. (Compl't ¶¶ 175-81.) Count Five alleges that U.S. Bank breached its fiduciary duty to the Certificateholders. (Compl't ¶¶ 182-89.)

RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Iqbal, 556 U.S. at 678. Instead, the Court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. The Complaint must include non-conclusory factual allegations that "'nudge[ ]'" its claims "'across the line from conceivable to plausible.'" Id. at 680 (quoting Twombly, 550 U.S. at 570).

"For the purpose of a motion to dismiss under Rule 12(b)(6), the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Allco Fin. Ltd. v. Klee, 861 F.3d 82, 98 n.13 (2d Cir. 2017). "At the motion to dismiss stage, a district court may dismiss a breach of contract

10

claim only if the terms of the contract are unambiguous." Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d 152, 156 (2d Cir. 2016). "A contract is unambiguous . . . if 'the contract language has a definite and precise meaning . . . and concerning which there is no reasonable basis for a difference of opinion.'" Id. (quoting Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., 773 F.3d 110, 114 (2d Cir. 2014)). No party has urged that the PSA is ambiguous.

"On a motion to dismiss, a court may also consider matters 'of which judicial notice may be taken under Fed. R. Evid. 201.' Included among such matters are decisions in prior lawsuits." DeMasi v. Benefico, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008) (Connor, J.) (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); see also Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) ("it is proper to take judicial notice of the fact that . . . prior lawsuits . . . contained certain information, without regard to the truth of their contents . . . .").

DISCUSSION.

I.      The Pre-Suit Demand Requirement of the PSA's No-Action Clause Does Not Bar
        Plaintiffs' Claims.

U.S. Bank argues that the Certificateholders' claims are barred by failure to comply with the pre-suit demand requirement of section 11.08 of the PSA, which is titled, "Limitation on Rights of Certificateholders." This type of provision is known as a "no-action" clause. See, e.g., Cruden v. Bank of New York, 957 F.2d 961, 967-968 (2d Cir. 1992).

Section 11.08 sets certain conditions that Certificateholders must satisfy before bringing a legal action to enforce the PSA. It provides that "[n]o" Certificateholder "shall have any right" to bring a legal action "under or with respect to this Agreement," unless 1.) he or she has given written notice to U.S. Bank or the Wells Fargo, in its capacity as Trust Administrator,

of an ongoing MSET, and 2.) and Certificateholders who collectively have at least 25% of outstanding voting rights request in writing that U.S. Bank or Wells Fargo in its capacity as Trust Administrator commence legal action.  (Id.)  The Certificateholders who raise the request must offer to provide a reasonable indemnity for costs and liabilities.  (Id.)  If, after 60 days, the request is "neglected or refused," the Certificateholders may then bring legal action, provided that the action does not "affect, disturb or prejudice" the other Certificateholders.  (Id.)

The Complaint acknowledges that plaintiffs did not satisfy conditions set by section 11.08 but assert that their compliance is "excused" by New York law.  (Compl't ¶ 143.) Plaintiffs allege that it would be "absurd" to interpret the PSA to require a pre-suit demand that U.S. Bank sue itself and to require Certificateholders to indemnify U.S. Bank for its own liability.  (Compl't ¶ 142-44.)

Courts applying New York law have consistently concluded that no-action clauses similar to section 11.08 do not apply to holders who assert claims against the trustee.  "There are claims which, by law, cannot be prohibited by a no-action clause, most notably claims against the trustee."  Quadrant Structured Prod. Co. v. Vertin, 23 N.Y.3d 549, 566 (2014).  Cruden observed that it "obviously is correct" that a no-action clause does not bar holders' claims against a trustee, since "it would be absurd to require the debenture holders to ask the Trustee to sue itself."  Cruden, 957 F.2d at 968.  Citing Cruden, Judge Nathan concluded that certificateholders of an RMBS trust had authority to bring legal action against the trustee to enforce a PSA, even though they did not provide the pre-suit notice required by a no-action clause.  Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co., 2016 WL 439020, at *3 (S.D.N.Y. Feb. 3, 2016); accord Royal Park Investments SA/NV v. HSBC Bank USA, Nat'l Ass'n, 109 F. Supp. 3d 587, 606 (S.D.N.Y. 2015) (no-action clause did not bar

12

certificateholders' claims against RMBS trustee because "the Second Circuit's holding is clear: a No-Action Clause does not apply to debenture holder suits against the indenture trustee, as it would make little sense to ask the trustee to sue itself.") (Scheindlin, J.).

Defendant urge that the reasoning of Cruden does not apply because section 11.08 requires pre-suit notice either to U.S. Bank as trustee or Wells Fargo in its capacity as Trust Administrator. (Def. Mem. at 23.) But plaintiffs allege that U.S. Bank, as Trustee, breached its obligations to enforce the PSA against Wells Fargo in its capacity as Master Servicer. Such a demand would therefore have requested Wells Fargo to enforce the PSA against U.S. Bank, for the purpose of having U.S. Bank enforce the PSA against Wells Fargo. The court in VNB Realty, Inc. v. U.S. Bank, N.A., 2014 WL 1628441, at *3 (D.N.J. Apr. 23, 2014), concluded that such an application would be absurd:

> Here, it would have been absurd to demand that U.S. Bank bring the instant suit against itself. See Cruden, 957 F.2d at 968. Similarly, it would have been absurd for [plaintiff] to demand that Wells Fargo bring the instant suit. [Plaintiff] is alleging that U.S. Bank harmed the Trusts because U.S. Bank knew or should have known about Wells Fargo's robosigning but failed to take corrective action.

The reasoning of VNB Realty is persuasive, and is consistent with Cruden and its application by courts in this District. U.S. Bank's interpretation of the no-action clause would require a demand to either U.S. Bank or Wells Fargo to take legal action based on its own alleged breach of the PSA. Under Cruden and related authorities, this would be an absurd application of the no-action clause.

The Court therefore concludes that plaintiffs' claims are not barred by the pre-suit demand requirement of the no-action clause.

13

II.     The Complaint Does Not Plausibly Allege the Existence of an MSET.

       A.  The Complaint Inaccurately Conflates the Separate Duties of the Trust Administrator with the Duties of the Master Servicer.

Each of plaintiffs' five claims is premised in whole or in part on the assertion that U.S. Bank failed to carry out its obligations to enforce the PSA when Wells Fargo, as Master Servicer, caused an MSET.  The PSA defines an MSET as an event of default.  (PSA § 7.01.) Plaintiffs allege that U.S. Bank breached the PSA, its duty of trust to Certificateholders and violated the implied covenant of good faith and fair dealing by failing to take actions that would remedy an MSET.  (Compl't ¶ 154, 166, 172.)  Count Four, alleging a violation of New York's Streit Act, and Count Five, alleging breach of fiduciary duty, are premised in their entirety on U.S. Bank's alleged failure to act in light of Wells Fargo's event of default.  (Compl't ¶ 185.)

It is important to distinguish between the various duties of Wells Fargo.  Wells Fargo is a party to the PSA in separate capacities as the Trust Administrator, Master Servicer and Custodian.  As noted, the Trust Administrator and Master Servicer perform different roles under the PSA, and only the actions of the Master Servicer give rise to a Master Servicer Event of Termination – the "MSET" that constitutes an event of default.  (PSA § 7.01.)  Under the PSA, circumstances that trigger an MSET include the failure to deposit required amounts in the Trust's "Distribution Account,"[3] a defined term; the failure of the Master Servicer to perform other material covenants and agreements established by the PSA; events related to the liquidation of the Master Servicer; the assignment of duties required to be performed by the Master Servicer;

---

[3] The PSA defines a "Distribution Account" as "[t]he separate Eligible Account created and maintained by the Trust Administrator pursuant to Section 3.07 in the name of the Trustee for the benefit of the Certificateholders and the Certificate Insurer . . . ."  (PSA § 1.01.)

and the failure to submit required reports of compliance as to certain servicing criteria.  (PSA §§ 7.01, 3.21, 3.22.)

The Trust Administrator has different duties than the Master Servicer, and is, among other things, responsible for "apply[ing] such funds" held in the Distribution Account toward payments to the Certificateholders.  (PSA § 4.02(a).)  Wells Fargo brought the 2010 interpleader action in its capacity as Trust Administrator, not as Master Servicer, for the purpose of adjudicating the distribution rights of Assured and the Certificateholders under the PSA's "waterfall" provisions.  Wells Fargo Bank, N.A. v. ESM Fund I, LP, et al., 10 Civ. 7332 (LBS).  The Master Servicer is also governed by Article VIII of the PSA, whereas the Trust Administrator is governed by Article IX.  Thus, on the face of the PSA, Wells Fargo's duties as Trust Administrator to "withdraw and apply" funds from the Distribution Account to Certificateholders are distinct from its duties as Master Servicer to "deposit[ ]" funds in the Distribution Account.  (PSA §§ 4.01 4.02(a), 7.01(i).)

Critically, an MSET may be caused by the Master Servicer's "failure to cause to be deposited" required amounts in the Distribution Account, but no mention is made of applications from the Distribution Account.  (PSA § 7.01(i).)  In attempting to allege the existence of an MSET, the Complaint cites to events related Wells Fargo's interpleader lawsuit, and an interim decision that Wells Fargo made to credit approximately $7.2 million to Assured, as opposed to distributing that sum to plaintiffs and other senior Certificateholders.  (Compl't ¶¶ 69-71.)  The Complaint alleges that by "wrongfully crediting" money to Assured, Wells Fargo caused an MSET under subsections 7.01(i) and (ii) of the PSA, which requires the Master Servicer to deposit sums in the Distribution Account and to perform under the Agreement's "material covenants."  (Compl't ¶ 71.)  This is a misreading of the unambiguous language of the

15

PSA, which recognizes an MSET in the event that the Master Servicer "fails to cause to be deposited in the Distribution Account" the required amounts (PSA § 7.01(i)) – as opposed to the Trust Administrator's duty to "withdraw . . . from the Distribution Account" and "apply such funds" to Certificateholders.  (PSA § 4.02(a).)  Indeed, the Complaint expressly relies on Wells Fargo's duties as Trust Administrator.  The Complaint alleges:

> The PSA requires the Trust Administrator to distribute available funds to Certificateholders and other parties in the order of priority set out at Section 4.02.  By crediting Assured over $7 million from Available Funds in violation of the priority of distribution provisions, the Trust Administrator failed to give the senior classes of certificates their full scheduled distributions of interest and principal for a given Distribution Date.

(Compl't ¶ 72.)

To the extent that plaintiffs cite to Wells Fargo's actions concerning the distribution of funds under the PSA's waterfall provisions, that relates to conduct of the Trust Administrator, not a "fail[ure] to cause to be deposited in the Distribution Account any amount so required to be deposited" by the Master Servicer, or a breach of any other covenant or agreement.  (PSA §§ 7.01(i), (ii).)  These are different obligations, undertaken in Wells Fargo's different capacities.  Neither the interpleader action nor the current Complaint has identified a failure on the part of the Master Servicer to deposit the funds remitted by servicers into a sub-account of the Distribution Account.  (PSA §§ 3.07(b), 7.01(i).)  Instead, plaintiffs' allegations turn entirely on the Trust Administrator's distribution across different classes of Certificateholders pursuant to the waterfall provisions.  (PSA § 4.02(a).)

Similarly, plaintiffs have not adequately alleged an MSET based on the Master Servicer's duty to compile monthly "Distribution Date Statements" based on Servicer information, which the Trust Administrator publishes and uses as "instructions" to determine

Certificateholder payments.  (PSA §§ 4.02(a), 4.04(a).)  The Complaint does not identify any inaccuracy in these statements, and does not otherwise allege that these statements gave rise to an MSET.  (See Opp. Mem. at 11-12.)

The Complaint does not plausibly allege facts that show an MSET.  The deposit obligations of the Master Servicer are different, and precede, the distribution obligations of the Trust Administrator.  That Wells Fargo acted in both capacities does not graft a purported failing on the part of the Trust Administrator into a Master Servicer Event of Termination, or MSET.

Plaintiffs' claims premised on the existence of an MSET are therefore dismissed.

### B.  The Complaint Does Not Identify Additional Breaches on the Part of the Master Servicer.

At times, the Complaint refers to certain additional obligations on the part of the Master Servicer.  It alleges that the PSA requires Wells Fargo to service the mortgage loans in accordance with law and the practices of a prudent loan servicer.  (Compl't ¶ 29.)  The Complaint notes that the Master Servicer is responsible for reporting to U.S. Bank about each individual servicer's compliance with its duties under the servicing agreements.  (Compl't ¶ 65.)

But the Complaint is silent as to any facts showing a failure to follow the law and practices of a prudent loan servicer.  It is also silent about a failure of any identified servicer to comply with an identified duty under a servicing agreement.  Rule 8(a) requires a pleader to "show" facts that entitle it to relief.

Thus, no MSET is plausibly alleged, and the claims premised on the occurrence of an MSET are dismissed.

17

III.    Plaintiffs Have Not Plausibly Alleged that U.S. Bank Breached Section 2.03 of the PSA.

Section 2.03 of the PSA provides that U.S. Bank, as Trustee, "shall enforce" the obligations of UBS to correct and cure any mortgage loan that breached the PSA's representations and warranties.  It also states that U.S. Bank "shall" notify UBS if it has knowledge of such a breach.  (PSA § 2.03.)

Plaintiffs assert that U.S. Bank breached the PSA by failing to take timely action to enforce UBS's remedial obligations after learning that UBS had breached its representations and warranties about the Trust's mortgage loans.  (Compl't ¶¶ 64, 132-34.)  Plaintiffs allege that on July 25, 2012, U.S. Bank told them "point blank that it would not take any action . . . ." (Compl't ¶ 133.)  As described in the Complaint, the PSA required U.S. Bank to notify UBS of the breaches and "to investigate further and in greater detail the entire mortgage loan portfolio," and then to enforce UBS's remedial obligations if necessary.  (Compl't ¶ 134.)

These allegations fail to account for U.S. Bank's role as plaintiff in the pending action before the undersigned, U.S. Bank, National Association v. UBS Real Estate Securities Inc., 12 Civ. 7322 (PKC).  That case has proceeded through extensive discovery, motion practice and trial, the fact record of which counsel represented as consisting of two terabytes of electronic information.  As noted, in that case, U.S. Bank, acting on behalf of the Trust and two other, near-identical RMBS trusts, brought a breach of contract claim against UBS, alleging that it breached the representations and warranties contained in the trusts' PSAs.  At the summary judgment stage, this Court concluded that U.S. Bank's claims concerning certain loans were time-barred because it failed to provide UBS with a timely written notices of breach.  MASTR Adjustable Rate Mortgages Tr. 2006-OA2 v. UBS Real Estate Sec. Inc., 2015 WL 764665, at *8 (S.D.N.Y. Jan. 9, 2015).  However, in light of the First Department's subsequent decision in Nomura, 133

18

A.D.3d 96, the Court revisited that conclusion in a pre-trial ruling, and concluded that U.S. Bank had provided timely, effective notice of all mortgage loans alleged to have been in breach.  See MASTR, 2016 WL 1449751.

The Complaint does not acknowledge the foregoing procedural history, of which the Court may take judicial notice.  Instead, plaintiffs vaguely allege that U.S. Bank was, in unspecified ways, lax in investigating, noticing and enforcing remedies based on UBS's purported breaches.  Those allegations are conclusory and do not plausibly allege a claim.  The Complaint does not allege that Certificateholders were harmed or prejudiced by U.S. Bank's failure to commence a legal action at some earlier point in time.  The Complaint also does not assert that the Certificateholders are subject to less recovery than they are entitled due to the timing of U.S. Bank's breach notices and the commencement of its action against UBS.  The Complaint offers only broad allegations that U.S. Bank failed to notice or enforce UBS's obligations in the event of a breach, and makes unsupported allegations of "material harm" and injury to Certificateholders.  (Compl't ¶¶ 64, 132-34, 141.)

Plaintiffs have not plausibly alleged that U.S. Bank breached its obligations under section 2.03 of the PSA to provide notices of breach to UBS and to enforce the PSA's remedial obligations against UBS.  Plaintiffs' claims premised on U.S. Bank's obligations under section 2.03 are therefore dismissed.

IV.     Plaintiffs' Claims Concerning U.S. Bank's Physical Possession of Files Are Dismissed.

The Certificateholders allege that U.S. Bank breached the PSA by failing to take physical possession of the Trust's mortgage files and then review them for document defects. (Compl't ¶ 124.)  They allege that sections 2.01 and 2.02 of the PSA required U.S. Bank to possess and review the mortgage files, and to notify UBS and Wells Fargo as Master Servicer of

any document defects, including what plaintiffs contend were obvious missing documents. (Compl't ¶¶ 60, 124, 126, 128-31.)

This claim is contrary to the text of sections 2.01 or 2.02, which places these obligations on Wells Fargo in its capacity as Custodian.  Section 2.01(b)(i) represents that the Depositor of the Trust (non-party Mortgage Asset Securitization Transactions Inc.) "has delivered or caused to be delivered to the Custodian, on behalf of the Trustee, for the benefit of the Certificateholders and the Certificate Insurer, the following documents or instruments . . . ." The PSA then lists the documents to be delivered to Wells Fargo in its role as Custodian, including the original mortgage note, the original recorded mortgage or a copy that is certified to be true and correct, and the lender's title insurance policy.  (PSA § 2.01(b)(i).)  Section 2.02 similarly represents that "[t]he Custodian, on behalf of the Trustee, acknowledges receipt" of documents listed in Exhibit G to the PSA "and declares that it holds and will hold such related documents and other documents delivered to it constituting the Mortgage Files . . . ."  The Custodian must thereafter certify to the Trustee "that such documents appear regular on their face and relate to such Mortgage Loan."  (PSA § 2.02.)

The duties of U.S. Bank, as the Trustee, are limited, and do not encompass possession or inspection of these documents.  Upon receiving final certification from the Custodian, U.S. Bank "shall notify" UBS as the Transferor and Assured as the Certificate Insurer of any defects identified by the Custodian.  (PSA § 2.02.)  UBS must then cure the document defects or repurchase the loan, if the defects materially and adversely affect the interests of the Certificateholders or Assured.  (Id.)  This is a narrow responsibility on the part of U.S. Bank, one that requires it to relay notice of defects identified by Wells Fargo as Custodian.  The PSA does

20

not create an obligation on the part of U.S. Bank to possess mortgage documents or undertake its own, independent review for document defects.

Plaintiffs have directed the Court to no other provisions of the PSA that support their allegations concerning U.S. Bank's duties to possess and review Mortgage Files. Sections 2.01 and 2.02, both of which are cited in the Complaint, expressly and unambiguously place those duties on the Custodian.

To the extent that the Complaint alleges that U.S Bank breached the PSA by failing to take physical possession of the mortgage files and certify their contents, that claim is dismissed.

V.      Plaintiffs' Duty of Trust Claim Is Dismissed.

Count Two alleges that U.S. Bank breached a duty of trust under New York common law. Plaintiffs allege that U.S. Bank had a common law duty of undivided loyalty and an obligation to act prudently in the best interests of the Certificateholders, but that it failed to enforce the terms of the PSA against UBS and against Wells Fargo as Master Servicer. (Compl't ¶¶ 159-69.) It alleges that U.S. Bank was "economically beholden" to other parties to the PSA, and was concerned about its own liability for its roles in other RMBS trusts, including other trusts in which U.S. Bank acted as master servicer. (Compl't ¶¶ 164-69.)

The duty of trust claim is dismissed because it solely alleges monetary losses based on U.S. Bank's alleged failure to carry out its contractual duties. The claim repackages the breach of contract claim, and is premised on U.S. Bank's alleged failure to perform under the PSA. It alleges that U.S. Bank failed to enforce the PSA against UBS and Wells Fargo in its capacity as Master Servicer. (Compl't ¶¶ 162-63.) When a plaintiff's common-law tort claim is based on failure to perform under a contract, New York law bars such a claim under its

21

"economic loss" doctrine.  See, e.g., Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 58 (2d Cir. 2012) ("Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated.  . . .  If . . . the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative."); Royal Park, 109 F. Supp. 3d at 609 (dismissing negligent misrepresentation claim against RMBS trustee that alleged only monetary losses based on breach of contractual duties).  Unlike other actions, in which courts have permitted tort claims to proceed in parallel with contract claims, the plaintiffs here have alleged injury "merely from the violation of the governing agreements[.]"  BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n, 247 F. Supp. 3d 377, 399 (S.D.N.Y. 2017) (Failla, J.) (collecting cases).

Plaintiffs' duty of trust claim is therefore dismissed.

VI.    Plaintiffs' Claim Alleging Breach of the Covenant of Good Faith and Fair Dealing Is Dismissed.

Count Three alleges that U.S. Bank breached the implied covenant of good faith and fair dealing by failing to take remedial actions when learning of an MSET and by failing to bring suit against UBS until September 2012.  (Compl't ¶¶ 170-74.)

New York law has long recognized that an implied covenant of good faith and fair dealing exists in every contract, meaning "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ."  Kirke La Shelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 87 (1933).  Here, the PSA expressly provides that, absent an MSET, the Trustee is not bound by any implied covenants.

22

After stating that no provision of the PSA shall be construed to relieve the Trustee of its own negligence, the PSA states:

> [U]nless a Master Servicer Event of Termination of which a Responsible Officer of the Trustee has actual knowledge shall have occurred and be continuing, the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement, <u>no implied covenants or obligations shall be read into this Agreement against the Trustee</u> and the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein . . . .

(PSA § 8.01(i); emphasis added.)  The First Department recently enforced identical provisions of RMBS trust agreements.  See <u>Fixed Income Shares: Series M v. Citibank, N.A.</u>, 157 A.D.3d 541, 542 (1st Dep't 2018) ("The cause of action for breach of the implied covenant of good faith and fair dealing should be dismissed because the governing [PSA] states, '[N]o implied covenants or obligations shall be read into this Agreement against the Trustee.'"); <u>STS Partners Fund, LP v. Deutsche Bank Sec., Inc.</u>, 149 A.D.3d 667, 669 (1st Dep't 2017) ("The claim for breach of the implied covenant of good faith and fair dealing was correctly dismissed as against Wells Fargo, because section 6.01(e)(i) of the trust agreements states, '[N]o implied covenants or obligations shall be read into this Agreement against the Trustee.'").

The Complaint has not plausibly alleged the existence of an MSET.  Because section 8.01(i) provides that no implied covenants "shall be read into this Agreement against the Trustee" absent an MSET, U.S. Bank's motion to dismiss the breach of implied covenant claim is granted.

VII.   <u>Plaintiffs' Streit Act Claim Is Dismissed.</u>

Count Four alleges that U.S. Bank violated the Streit Act, N.Y Real Property Law § 126(1), by failing to protect the Certificateholders after becoming aware of an event of default.

23

This claim is dismissed because section 126(1) sets forth certain provisions that must be included in a trust instrument, and is not directed to a trustee's performance. The statute provides that no trustee "shall hereafter accept a trust" under any indenture or mortgage unless the instrument creating the trust requires the trustee to exercise its powers if an event of default occurs, and to use the same care and skill "as a prudent man would exercise under the circumstances in the conduct of his own affairs." N.Y Real Property Law § 126(1).

This language "requires only that a trust indenture contain certain provisions," and "does not address compliance with the provision . . . ." Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co., 172 F. Supp. 3d 700, 723 (S.D.N.Y. 2016) (Koeltl, J.); see also Commerzbank AG v. Deutsche Bank Nat'l Tr. Co., 234 F. Supp. 3d 462, 474 (S.D.N.Y. 2017) (dismissing Streit Act claim premised on trustee's failure to comply with the terms required by section 126) (Koeltl, J.); Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n, 2016 WL 1169515, at *11 (S.D.N.Y. Mar. 22, 2016) (describing as "unfounded" plaintiffs' assertion of Streit Act liability for trustee's failure to act on duties required by section 126) (Forrest, J.). Here, section 8.01 of the PSA provides that if an event of default arises, U.S. Bank must exercise the care and skill of a "prudent person," as the Streit Act requires.

Because the Streit Act does not apply to a trustee's performance when an event of default arises, plaintiffs' Streit Act claim is dismissed. It also is dismissed for the separate reason that the Complaint has failed to plausibly allege an event of default, for the reasons previously discussed.

VIII.   Plaintiffs' Breach of Fiduciary Duty Claim Is Dismissed.

Count Five alleges that U.S. Bank breached its fiduciary duty to the Certificateholders. Generally, absent an event of default, an indenture trustee does not have a

fiduciary duty.  See AG Capital Funding Partners, L.P. v. State St. Bank & Tr. Co., 11 N.Y.3d

146, 158 (2008).  When a PSA establishes a duty of prudence on the part of a trustee if an event

of default occurs, a claim directed to that duty sounds in contract, and not an independent

fiduciary duty.  See, e.g., Phoenix Light SF Ltd. v. Bank of New York Mellon, 2015 WL

5710645, at *7 (S.D.N.Y. Sept. 29, 2015); see also STS Partners, 149 A.D.3d at 670 (dismissing

breach of fiduciary duty claim against RMBS trustee as duplicative of contract claim).

Because the Complaint has not plausibly alleged an event of default, it cannot

plausibly allege a breach of fiduciary duty on the part of U.S. Bank.  Even if the Complaint had

alleged an event of default, plaintiffs' claims directed to U.S. Bank's heightened duties would

sound in contract, and would not implicate a fiduciary duty of the trustee.

Plaintiffs' breach of fiduciary duty claim is therefore dismissed.

CONCLUSION.

For the foregoing reasons, the defendant's motion to dismiss is GRANTED in its

entirety.  (Docket # 45.)  The Clerk is directed to terminate the motion, close the case and enter

Judgment in favor of the defendant.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 2, 2018

25